**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **23-02826-eg**

# ORDER ON OBJECTION TO DEBTORS' CLAIM FOR EXEMPTIONS

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**05/24/2024**



Entered: 05/24/2024

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Joshua Allen Ingram<br>Ashley Ingram,<br><br>Debtors. | C/A No. 23-02826-EG<br><br>Chapter 7<br><br>**ORDER ON OBJECTION TO DEBTORS' CLAIM FOR EXEMPTIONS** |

**THIS MATTER** comes before the Court upon the Objection to Claims of Exemption ("Objection to Exemptions") filed on March 22, 2024 by a class of creditors represented by Poullin Willey Anastopoulo LLC (the "Class Action Creditors").[1] The Class Action Creditors comprise a class of individuals that paid Indigo Pools, LLC ("Indigo Pools"), a business wholly owned and operated by Joshua Allen Ingram and Ashley Ingram ("Debtors"), to complete in-ground pool projects that were never finished. They assert that their combined claims total $2,957,220.40, most of which—if not all—are unsecured.[2] In the Objection to Exemptions, the Class Action Creditors contend that it would be inequitable to allow Debtors to benefit from exemptions for certain property acquired with money wrongfully kept from the Class Action Creditors. Debtors filed a Response (the "Response") arguing that the Objection to Exemptions was untimely.[3]

At the Court's request, the parties filed a Joint Statement of Dispute setting forth their positions and stipulating to the evidence to be introduced at the hearing.[4] A hearing on the Objection to Exemptions was held on May 15, 2024. Michael Conrady, counsel for Debtors, and Paul Doolittle of Poullin Willey Anastopoulo LLC, counsel for the Class Action Creditors ("Class

---

[1] ECF No. 85.
[2] *Id.* at ¶ 12. *See also* Claims Register.
[3] ECF No. 95, filed on Apr. 9, 2024.
[4] ECF No. 108, filed May 9, 2024.

Counsel"), were present. Tara Nauful, counsel for the Chapter 7 Trustee ("Trustee"), also appeared but did not object to the exemptions filed.[5] Following legal arguments and testimony from Debtor Joshua Allen Ingram ("Mr. Ingram"), the Court took the matter under advisement.

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Pursuant to Fed. R. Civ. P. 52, which is made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014(c), and after a careful analysis of the record before it, the arguments of the partis, the evidence presented at the hearing, and the legal authority binding it, the Court overrules the Objection to Exemptions for the reasons stated herein.[6]

## FACTUAL BACKGROUND

Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 19, 2023 (the "Petition Date"). On September 20, 2023, the original Notice of Chapter 7 Bankruptcy Case (the "Notice of Case Commencement") was mailed to the creditor matrix included with Debtors' voluntary petition.[7] That creditor list did not include the Class Action Creditors. On October 11, 2023, Debtors filed their first set of Schedules and Statements (the "Original Schedules and Statements").[8] The Class Action Creditors were listed as unsecured creditors on Schedule F. On Schedule C, Debtors claimed several state law exemptions for property disclosed in Schedule A/B, including the following exemptions that are in dispute:

a. For their residence in Summerville, South Carolina (the "Primary Residence"), with an estimated value of $920,000.00, Debtors claimed an exemption pursuant to S.C. Code Ann. § 15-41-30(A)(1)(a) (the "homestead exemption") in the amount of $134,175.00;

---

[5] Evan Kelly, a judicial lien creditor, was also present at the hearing to object to a motion to avoid judicial lien, but he did not file an objection to Debtors' exemptions. It is not entirely clear whether Mr. Kelly is also one of the Class Action Creditors. While he did not present any evidence in support of his arguments, he raised general concerns regarding Debtors' alleged wrongful and fraudulent acts related to charging customers of Indigo Pools for work that was never performed.
[6] To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.
[7] ECF No. 6. *See also* ECF No. 7 (amended notice filed the same day with the same list of recipients).
[8] ECF No. 22.

b. For a plot of vacant land located in Knightsville, South Carolina (the "Knightsville Property") with an estimated value of $79,500.00, Debtors claimed an exemption pursuant to S.C. Code Ann. § 15-41-30(A)(7) (the "'wild card' exemption") in the amount of $13,400.00;

c. For their 2019 Jeep Wrangler (the "Jeep Wrangler") with an estimated value of $25,000.00, Debtors claimed an exemption pursuant to S.C. Code Ann. § 15-41-30(A)(2) (the "vehicle exemption") in the amount of $12,450.00; and

d. For miscellaneous household goods (the "Household Goods") with an estimated value of $6,000.00, Debtors claimed an exemption pursuant to S.C. Code Ann. § 15-41-30(A)(3) (the "household goods exemption") in the amount of $6,000.00.

On October 12, 2023, the Notice of Case Commencement was mailed to the Class Action Creditors.[9] Line 9 on the Notice of Case Commencement set forth various deadlines, including the deadline to object to Debtors' exemptions, which was established as "30 days after the conclusion of the meeting of creditors."[10] The Notice of Case Commencement further stated that the 341 meeting of creditors would be held on November 1, 2023 at 10:00 a.m. through Zoom video conferencing.

Class Counsel, who also represents the Class Action Creditors in a pending suit in civil court, filed a Notice of Appearance on October 31, 2023.[11] The 341 meeting of creditors took place as scheduled on November 1, 2023, and was concluded on the same day. Accordingly, December 1, 2023, was the deadline for filing objections to Debtors' exemptions claimed on Schedule C. On November 16, 2023, Debtors' counsel filed a Motion to Restrict Public Access/Redact Document and/or to Withdraw Document seeking to restrict the Original Schedules and Statements from public view because Debtors' Form B-121, which displays both Debtors' full

---

[9] ECF No. 24.
[10] The Notice of Case Commencement further stated: "The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection."
[11] ECF No. 29. Another attorney from Poullin Willey also filed a Notice of Appearance on behalf of the Class Action Creditors. *See* ECF No. 28.

3

social security numbers, was inadvertently included in the filing.[12] The Court subsequently entered an Order Disabling Public Access, instructing the Clerk of Court to disable public access to the Original Schedules and Statements and directing Debtors to refile their schedules and statements, without any personal private information ("PPI") displayed, within 20 days—that is, by December 6, 2023.[13] Debtors, however, did not file their amended schedules and statements until February 21, 2024 (the "Amended Schedules and Statements").[14] Aside from removing the previously disclosed PPI, the Amended Schedules and Statements included several substantive revisions. The only change made to Debtors' Schedule C was an increase in the value of Mr. Ingram's jewelry from $50 to $300 and a corresponding increase in the amount claimed as exempt.

On February 29, 2024, the Class Action Creditors commenced an adversary proceeding against Debtors, captioned *Crosby et al. v. Ingram*, Adv. Pro. No. 24-80016-eg, seeking a determination that the indebtedness due and owing by Debtors to the Class Action Creditors should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6). The United States Trustee also commenced an adversary proceeding against Debtors, Adv. Pro. No. 24-80027, seeking the denial of Debtors' discharge pursuant to 11 U.S.C. §§ 727(a)(3), (4)(A), and (5). Both adversaries are in their early stages, and Debtors have yet to file an answer in either.

The Class Action Creditors filed the Objection to Exemptions on March 22, 2024—142 days after the 341 meeting was held and concluded and 30 days after Debtors filed the Amended Schedules and Statements. The Class Action Creditors object to Debtors' claims of exemption for their Primary Residence, the Knightsville Property, the Jeep Wrangler, and the Household Goods

---

[12] ECF No. 36.
[13] ECF No. 37, filed Nov. 16, 2023. The Order further provided that "[a]ccess to Schedules and Statements may still be provided by the Clerk of Court to Debtor(s), any attorney for the Debtor(s), the case trustee, if any, and the United States trustee upon request."
[14] ECF No. 67.

and assert that Debtors purchased their Primary Residence on June 1, 2022, and the Knightsville Property on December 20, 2021. They further contend that it would be inequitable to allow Debtors to claim those exemptions because the property at issue was acquired using "stolen, fraudulently obtained, or embezzled money" from the Class Action Creditors. Debtors filed the Response on April 3, 2024, arguing that the exemptions are properly claimed and that the Objection to Exemptions was untimely because it was not filed by the December 1, 2023 deadline.

On April 4, 2024, the Trustee filed a motion seeking to sell Debtors' Primary Residence to a third party for $880,000.00 and noted that various judicial liens encumbered the property.[15] On April 10, 2024, Debtors filed a motion seeking to have two judicial liens encumbering the Primary Residence avoided pursuant to 11 U.S.C. § 522(f)(1)(A), as the liens impair the homestead exemption to which Debtors would otherwise be entitled under 11 U.S.C. § 522(b).[16] The Court approved the sale of the Primary Residence on May 3, 2024, but ordered that, after paying closing costs, commission fees, and the mortgage balance owed to the first mortgagee, the remaining net sales proceeds should be held in escrow, pending the outcome of the Objection to Exemptions and the lien avoidance motion.[17]

At the hearing on the Objection to Exemptions, the parties stipulated to the introduction of various documents filed in the bankruptcy case. Class Counsel asserted that the Objection to Exemptions was timely filed because it was submitted within 30 days of Debtors' filing of the Amended Schedules and Statements. Class Counsel further sought to introduce Debtors' transcribed testimony from the Rule 2004 examination that the United States Trustee conducted

---

[15] ECF No. 91.
[16] ECF Nos. 96 and 99, which amended the prior version of the motion to avoid liens filed at ECF No. 93.
[17] The motion to avoid judicial lien was withdrawn at the hearing on May 15, 2024, as a result of the first mortgagee's payoff being higher than originally expected, which would change the extent of the lien avoidance if Debtors' exemptions were upheld.

5

on January 22, 2024. More specifically, he sought to introduce various portions of the transcript to establish that customer payments made to Indigo Pools comprised Debtors' sole source of income when they acquired the property at issue. Debtors' counsel objected, noting that the Joint Statement of Dispute signed by the parties prior to the hearing did not list the Rule 2004 examination transcript among the proposed evidentiary exhibits.[18] The Court took the issue of the transcript's admissibility under advisement.

Debtors' counsel called Mr. Ingram as a witness at the hearing. Mr. Ingram testified that when he and his wife purchased their Primary Residence in 2022, they made a down payment of approximately $280,000.00, using about $200,000.00-$230,000.00[19] in proceeds from the sale of their prior residence and about $60,000-$80,000.00 in owners' draws from Indigo Pools. According to Mr. Ingram, neither him nor his wife had any other sources of income at that time aside from their salaries and occasional owner's draws from Indigo Pools. He also testified that he purchased the Jeep Wrangler in early 2021 with funds withdrawn from a 401(k) account and recounted that Debtors had acquired most of the Household Goods before forming Indigo Pools.

Upon the Court's inquiry as to whether the Class Action Creditors would benefit from the disallowance of Debtors' claimed homestead exemption, Trustee's counsel indicated that the payoff to the first secured creditor was expected to be higher than previously estimated. Accordingly, Trustee's counsel stated that if Debtors' exemptions are disallowed, the net sale proceeds would benefit judgment lienholders but would most likely not trickle down to the general unsecured creditors.

---

[18] *See* ECF No. 108, filed May 9, 2024.
[19] According to Debtors' Statement of Financial Affairs, however, it appears that the sale of their prior home resulted in net sale proceeds of approximately $145,000.00, which were used to purchase the current Primary Residence. Mr. Ingram was testifying based on his recollection, and no other evidence, aside from his testimony and the Schedules and Statements, was presented to corroborate the figures mentioned.

## **CONCLUSIONS OF LAW**

When a debtor files for bankruptcy, it creates a bankruptcy estate that includes all of the debtor's property falling within the broad definition provided in 11 U.S.C. § 541. *In re Holt*, 497 B.R. 817, 824 (Bankr. D.S.C. 2013). Once a bankruptcy estate is created, § 522 of the Bankruptcy Code allows debtors to exempt certain property under state or federal law. 11 U.S.C. § 522(b). Section 522(b)(1) offers debtors a choice between utilizing either the exemptions set forth in § 522(d)—which South Carolina has opted out of—or those provided by federal non-bankruptcy law and state law. *In re Sherrod*, 657 B.R. 444, 449 (Bankr. D.S.C. 2024); *In re Jordan*, 624 B.R. 147, 149 (Bankr. D.S.C. 2020). "With limited exceptions, property that is properly exempted 'is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . .'" *Sherrod*, 657 B.R. at 449 (quoting 11 U.S.C. § 522(c)).

Pursuant to § 522(l), a debtor seeking to claim exemptions "shall file a list of property that the debtor claims as exempt," and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." A party objecting to a debtor's claims of exemption bears "the burden of proving that the exemptions are not properly claimed" by a preponderance of the evidence. Fed. R. Bankr. P. 4003(c); *In re Gregory*, 487 B.R. 444 (Bankr. E.D.N.C. 2013).

In Schedule C, Debtors claim various exemptions pursuant to S.C. Code Ann. § 15-41-30. The Class Action Creditors object to the exemptions that Debtors claim in their Primary Residence, the Knightsville Property, the Jeep Wrangler, and the Household Goods. Their objection is not on the basis that the South Carolina exemptions are inapplicable or that they exceed the amounts allowed by statute. Rather, the Class Action Creditors' objection hinges on the supposed inequity that would result if Debtors were allowed to retain assets, or the exempt value thereof, that were allegedly obtained from ill-gained money through their business, Indigo Pools. While adversary

7

proceedings have been commenced against Debtors seeking to except various debts from discharge pursuant to 11 U.S.C. § 523 and to deny Debtors' discharge pursuant to 11 U.S.C. § 727, these adversary proceedings are in their early stages. Notably, neither the Trustee nor any of the judicial lien creditors whose liens encumber the Primary Residence objected to Debtors' exemptions.

The issues to be addressed are twofold: Whether the Objection to Exemptions was timely and, if so, whether the Class Action Creditors have met their burden of proof.

I.      **Timeliness of Objection to Exemptions**

With limited exceptions that do not apply here, "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded *or* within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1) (emphasis added).[20] *See, e.g., Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) (holding that the Chapter 7 trustee could not contest the validity of the debtor's claimed exemption after the 30-day period for objecting had expired and no extension was obtained; Rule 4003(b) was thereafter amended in 2008 to give the trustee until one year after the debtor's case is closed to object to fraudulently claimed exemptions). Notably, the deadlines established by Rule 4003(b) may be extended by the Court for cause if "before the time to object expires, a party in interest files a request for an extension." Fed. R. Bankr. P. 4003(b)(1). No such extension, however, was sought in this case.

The Objection to Exemptions was clearly filed outside the 30-day period after the 341 meeting of creditors concluded. Thus, the issue comes down to whether Debtors' filing of the

---

[20] Fed. R. Bankr. P. 4003(d) further provides that "[n]otwithstanding the provisions of subdivision (b), a creditor may object to a request under § 522(f) by challenging the validity of the exemption asserted to be impaired by the lien." Though Debtors filed a motion to avoid the judicial liens impairing their homestead exemption, the hearing for which was scheduled for the same morning as the Objection to Exemptions, they subsequently withdrew it at the hearing to refile it at a later date once the first mortgage payoff amount is finalized and a decision on the allowance of the exemptions rendered. Moreover, Rule 4003(d) appears inapplicable to the Class Action Creditors, as they do not claim to have judicial liens encumbering the properties at issue.

8

Amended Schedules and Statements triggered a new objection deadline under Rule 4003(b)(1), in which case the Class Action Creditors' objection was timely, even though the Amended Schedule C in no way modifies or adds to the exemptions that the Class Action Creditors seek to have disallowed. When considering if changes to schedules reset the deadline for objecting to exemptions, courts have drawn different conclusions as to how broadly to construe the "any amendment" language of Rule 4003(b)(1). The "majority" view interprets "any amendment to the list or supplemental schedules" to require a substantive change to the specific exemptions being challenged, meaning that the objection period only resets for exemptions that are added or amended in a revised Schedule C. *See*, *e.g.*, *In re Grueneich*, 400 B.R. 680 (8th Cir. BAP 2009); *Bernard v. Coyne* (*In re Bernard*), 40 F.3d 1028 (9th Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995); *In re Kazi*, 985 F.2d 318 (7th Cir. 1993); *In re Walker*, 505 B.R. 217 (Bankr. E.D. Tenn. 2014); *Matter of Gullickson*, 39 B.R. 922 (Bankr. W.D. Wisc. 1984); *see also* 9 COLLIER ON BANKRUPTCY ¶ 4003.03 (16th ed. 2024) ("The propriety of other exemptions previously finalized by the lack of a successful objection may not be reopened."). The rationale for adopting what is often referred to as the "restrictive" approach is the need for prompt action and finality. *See Taylor,* 503 U.S. at 644 ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality.").

Other courts, however, read the plain language of Rule 4003(b)(1) to reopen the window for objecting to *any* exemptions claimed in the amended schedules, even if they were similarly claimed in a prior Schedule C. *See In re Woerner*, 483 B.R. 106 (Bankr. W.D. Tex. 2012) (disagreeing with the more restrictive approach applied in *In re Payton*, 73 B.R. 31 (Bankr. W.D. Tex. 1987)); *In re Allen*, 454 B.R. 894 (Bankr. S.D. Fla. 2011). The court in *Woerner* disagreed with the majority view and concentrated on the plain language of the rule, which broadly refers to

9

"any amendment to the list" and lacks any express limitation on which exemptions can be challenged once the objection window reopens. 483 B.R. at 110. Additionally, the *Woerner* court disagreed with the finality rationale, considering that, pursuant to Fed. R. Bankr. P. 1009, "the debtor may upset this finality by amending schedules multiple times before the case is closed." *Id.*

Here, Debtors did file a revised Schedule C with the Amended Schedules and Statements, but the four claims of exemptions to which the Class Action Creditors object had not changed from what was stated in Debtors' original Schedule C filed on October 11, 2023. The record before the Court indicates that (a) notice of the case filing was mailed to the Class Action Creditors on October 12, 2023, (b) Class Counsel filed a notice of appearance a couple of weeks later on October 31, 2023; (c) the Original Schedules and Statements were restricted from public view on November 16, 2023, and then refiled and made available to the public again on February 21, 2024. To be clear, there is no indication that the Class Action Creditors did not have access to the schedules prior to December 1, 2023, and no argument to that effect has been raised. Thus, it would appear, based on the record as well as the fact that Class Counsel does not regularly practice in Bankruptcy Court, that the delay in objecting to the exemptions until 142 days after the conclusion of the 341 meeting was due to an oversight. On the other hand, the Court shares some of the *Woerner* court's concerns with applying a restrictive approach given the broad language of Rule 4003(b)(1). Resolving the dissonance in the interpretation of Rule 4003(b), however, is not critical in this case, and the Court does not need to decide whether the Objection to Exemptions is time barred because, even if it was found to be timely, the Class Action Creditors have failed to prove that the exemptions should be disallowed.

## II. Class Action Creditors Have Not Established Proper Grounds on Which the Challenged Exemptions Should Be Disallowed

Generally, the scope of a state-created exemption is determined by state law. *Law v. Siegel*, 571 U.S. 415, 425 (2014). However, in addition to any conditions on state exemption claims imposed by applicable state law, § 522 of the Bankruptcy Code provides several "carefully calibrated exceptions and limitations, some of which relate to the debtor's misconduct." *Law v. Siegel*, 571 U.S. at 424 (specifically referring to § 522(c), (o), and (q)). In *Law v. Siegel*, the U.S. Supreme Court addressed whether bankruptcy courts may use their statutory power granted by 11 U.S.C. § 105(a) and their inherent equitable powers to limit or disallow an exemption based on a debtor's bad faith conduct. There, the bankruptcy court had granted the Chapter 7 trustee's motion to surcharge the debtor's homestead exemption to award attorney's fees that the trustee incurred in opposing a fraudulent lien, which the debtor appeared to have created in a third party's name to make it seem as if his property had no available equity that could be recovered for creditors. The Supreme Court determined that the bankruptcy court had exceeded the limits of its authority under § 105(a) and its inherent powers in violation of § 522's express terms. Holding that bankruptcy courts "may not refuse to honor [a debtor's claimed] exemption absent a valid statutory basis for doing so," the Supreme Court found that while state exemption claims may be subject to limitations provided by state law, federal law "provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." *Id.* at 424-25.

The Class Action Creditors have failed to claim—let alone prove by a preponderance of the evidence—any statutory grounds upon which the Court is authorized to deny the challenged exemptions. The Court is not aware of any limitations that South Carolina law imposes on entitlement to the exemptions Debtors have claimed, and the Class Action Creditors have not pointed to any. Accordingly, following *Law v. Siegel*, the Class Action Creditors need to rely on

11

one of the exceptions enumerated in § 522 to seek the disallowance of Debtors' claimed exemptions. *See In re Levasseur*, 482 B.R. 15, 33 (Bankr. E.D. Mass. 2012) (stating that "Congress has created limited exceptions from the ability to claim an asset as exempt," so "[t]he causes of denying or limiting an exemption are therefore limited, and unless one of the expressly articulated exceptions applies, a claim of exemption should not be disallowed"). However, in their pleadings and arguments raised in court, they have only raised a general equity argument for disallowing Debtors' exemptions. Moreover, when asked at the hearing about what statutory basis the Class Action Creditors were relying on to advance their position, Class Counsel did not articulate a specific subsection of § 522 and reiterated the general argument of unfairness given Debtors' alleged fraudulent conduct, leaving it to the Court to find a proper basis for disallowing the exemptions.

While it is not up to the Court to find arguments to advance a party's position, the Court notes that out of the available exemptions and limitations provided in § 522, § 522(o) appears to be the only relevant subsection that the Class Action Creditors could have raised to challenge any of Debtors' exemptions based on bad faith conduct.[21] Section 522(o) states:

> For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—
> (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
> (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
> (3) a burial plot for the debtor or a dependent of the debtor; or
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition *with the intent to hinder, delay, or defraud a creditor* and that

---

[21] The Court also reviewed § 522(p) and (q), which currently cap state homestead exemption claims at $189,050.00 in the aggregate. Because the amount Debtors are claiming for the homestead exemption—$134,175.00—is less than the cap, these subsections cannot be applied to limit Debtors' exemption.

12

> the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

(emphasis added). This provision, when applicable, can limit a debtor's state law homestead exemption if the property claimed as exempt was acquired to shield non-exempt property from creditors. *See In re Lafferty*, 469 B.R. 235, 249 (Bankr. D.S.C. 2012) (reducing the debtors' homestead exemption to $0 where the debtors, shortly after learning about homestead exemptions on the Internet, temporarily transferred but maintained control of property to avoid the effects of a creditor's judgment lien); *In re Rensin*, 600 B.R. 870, 889 (Bankr. S.D. Fla. 2019) ("Section 522(o) provides for a reduction in the homestead value claimed, including the capped homestead value when section 522(p) applies, where it is shown that the debtor used non-exempt assets to obtain value in a homestead with the intent to stymie creditors."); *In re Sholdan*, 217 F.3d 1006, 1010-11 (8th Cir. 2000) (finding that the bankruptcy court properly concluded that there was "ample evidence extrinsic to the mere conversion of assets that showed fraudulent intent on the part of the debtor"). Given the intent requirement, mere conversion of non-exempt assets to exempt assets pre-bankruptcy is not enough to warrant limitation of a state homestead exemption. *In re Wilmoth*, 397 B.R. 915, 920 (B.A.P. 8th Cir. 2008); *In re Wrobel*, 508 B.R. 271, 280 (Bankr. W.D.N.Y. 2014); *In re Cook*, 535 B.R. 877, 888 (N.D. Fla. 2013).

Notably, the phrase "intent to hinder, delay or defraud" also appears in § 548 (fraudulent transfers) and § 727 (discharge in Chapter 7) of the Bankruptcy Code, suggesting that the intent standard of § 522(o) should be understood using the same principles and jurisprudence applied to findings of intent under § 548 and § 727. *In re Addison*, 540 F.3d 805, 811 (8th Cir. 2008) (citing several cases coming to this conclusion); *In re Lafferty*, 469 B.R. at 247; *Wrobel*, 508 B.R. at 274. Thus, courts often require the party opposing a debtor's homestead exemption under § 522(o) to prove that the debtor acted with actual fraudulent intent. *See In re Shaw*, 622 B.R. 569, 577 (D.

13

Conn. 2020); *In re Agnew*, 355 B.R. 276, 283 (D. Kan. 2006); 4 COLLIER ON BANKRUPTCY ¶ 522.08 (16th ed. 2024). Moreover, the objecting party must plead the circumstances constituting fraud with particularity. *Levasseur*, 482 B.R. at 34 (citing Fed. R. Civ. P. 9(b), made applicable in bankruptcy by Fed. R. Bankr. P. 9014(c) and 7009). The objecting party also has the burden of establishing how much of the exempt property's equity is actually "attributable" to fraud, as the value of non-exempt property converted to exempt property is not determinative of the amount that the homestead exemption should be reduced. *In re Crabtree*, 562 B.R. 749, 753-54 (B.A.P. 8th Cir. 2017).

In this case, the Class Action Creditors' pleading seeks relief that the Court simply cannot grant based on the record and evidence before it. To be clear, the Class Action Creditors did not object to Debtors' entitlement to the specific exemptions they claimed, nor did they contest the amount Debtors can claim under the South Carolina exemption statute; regardless, the Court cannot see a reason for the exemptions to be disallowed on those grounds. Instead, the Class Action Creditors argue that the Court should nevertheless disallow Debtors' exemptions for certain property that they believe would be inequitable for Debtors to retain given their alleged wrongdoing pre-bankruptcy. But *Law v. Siegel* makes clear that the Court cannot impair Debtors' claimed exemptions without a specific statutory basis for doing so under either § 522 or applicable state law. Even if the Court could consider the Objection to Exemptions as raising § 522(o) despite any reference to it, that subsection only applies to property claimed as a homestead, leaving the Court with no statutory authority to disallow the exemptions claimed for the Knightsville Property, the Jeep Wrangler, or the Household Goods. As to the Jeep Wrangler and Household Goods, Mr. Ingram's testimony indicated that they were purchased either with exempt assets or before Debtors created Indigo Pools.

14

Additionally, the Class Action Creditors have not put forth sufficient evidence for the Court to limit Debtors' homestead exemption claim under § 522(o). Following the conclusion other bankruptcy courts have come to regarding the intent standard, the Court finds that the Class Action Creditors needed to prove that Debtors used non-exempt assets to purchase the Primary Residence with the specific intent of defrauding creditors. Without any allegation that Debtors purchased their home for the purpose of shielding assets from creditors, the Objection to Exemptions lacks the particularity needed to plead fraudulent intent. At most, the evidence presented at the hearing—Mr. Ingram's testimony and the 2004 examination transcript[22]—indicates that some of the funds contributed towards Debtors' equity in the Primary Residence came from Indigo Pools. The testimony did not indicate whether these funds were non-exempt, and it is unclear how the Class Action Creditors expect the Court to determine how much of the business income Debtors spent was wrongfully obtained from customers when they have not presented any bank statements or tracing of funds. Mere acquisition of the property within the 10-year lookback period provided by § 522(o), however, is simply not enough to establish the requisite intent. The Court recognizes that the Class Action Creditors' pleadings filed for their adversary proceeding against Debtors present more substantial allegations of wrongdoing, suggesting that they may eventually provide evidence from which the Court could conclude Debtors acted with fraudulent intent. But if the

---

[22] The Court notes that Class Counsel submitted a copy of the 2004 examination transcript and never presented the Court with a sealed copy. Moreover, as stated above, the transcript of Mr. Ingram's 2004 examination was not listed as an exhibit on the Joint Statement of Dispute, which Class Counsel signed and agreed that "[b]y entering into or filing this statement, the parties shall be limited to and bound by the positions provided herein." At the hearing, Class Counsel read into the record portions of the transcript that he specifically sought to have introduced. Debtors' counsel did not object to the specific excerpts but objected to having the entirety of the transcript admitted into the record. The Court notes that the 2004 examination transcript is comprised of testimony by Debtors—whose exemptions the Class Action Creditors are seeking to deny; accordingly, the transcript does not appear to violate the rule against hearsay. *See* Fed. R. Evid. 803(d)(2). The Court, however, emphasizes that under normal circumstances it would disallow such evidence, as it was untimely presented and no sealed copy was provided. With that said, in order to make sense of the excerpts that were agreed to be admitted, the Court notes that it must consider the surrounding context in which they were raised; accordingly, the Court will admit the 2004 examination transcript into evidence.

15

Class Action Creditors were expecting the Court to rely on evidence yet to come, they certainly never made that clear, as Class Counsel never sought a continuance or requested that the Court hold the Objection to Exemptions in abeyance until after the adversary proceeding concludes.

Because the Class Action Creditors have not satisfied their burden of proof on their objection, Debtors' property listed in Schedule C is exempt pursuant to § 522(l). As the Supreme Court noted:

> We acknowledge that our ruling forces [the party objecting to exemptions] to shoulder a heavy financial burden resulting from [the debtor's] egregious misconduct, and that it may produce inequitable results for trustees and creditors in other cases. We have recognized, however, that in crafting the provisions of § 522, "Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors." *Schwab v. Reilly*, 560 U.S. 770, 791, 130 S. Ct. 2652, 177 L. Ed. 2d 234 (2010). . . . For the reasons we have explained, it is not for courts to alter the balance struck by the statute. . . .
>
> Our decision today does not denude bankruptcy courts of the essential "authority to respond to debtor misconduct with meaningful sanctions." . . . There is ample authority to deny the dishonest debtor a discharge.

*Law v. Siegel*, 571 U.S. at 426-27. While the result may seem harsh and inequitable given the serious wrongdoing alleged in the adversary proceedings that are pending, Debtors may eventually be denied their discharge, depending on the outcome of the adversary proceedings brought by the Class Action Creditors and the U.S. Trustee. Moreover, as Trustee's counsel indicated at the hearing, it appears unlikely that the Class Action Creditors would ultimately benefit from having Debtors' homestead exemption limited or disallowed, as any extra funds realized from sale of the Primary Residence would be paid to judgment lienholders first.

Based upon the foregoing, the Class Action Creditors' Objection to Exemption is overruled.

**AND IT IS SO ORDERED.**

16